UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 22-5292 c/w 23-371** |
| **COVINGTON FLOORING COMPANY** | **SECTION: "G"(1)** |

## ORDER AND REASONS

Before the Court is Defendants Covington Flooring Company, Inc., The Charter Oak Fire Insurance Company, and Travelers Property Casualty Company of America's (collectively "Defendants") "*Daubert* Motion to Exclude Expert Testimony of Plaintiff's Expert Witness, John W. Theriot."[1] In this litigation, Plaintiff St. Augustine High School, Inc., New Orleans, Louisiana ("Plaintiff") seeks recovery for damages sustained following a fire in the school's gymnasium.[2] John W. Theriot ("Theriot"), a certified public accountant and certified forensic accountant, was retained by Plaintiff to "conduct a preliminary analysis of the losses sustained by [Plaintiff]…"[3] Defendants argue that Theriot's testimony will not help the trier of fact, and Theriot's testimony is based on insufficient and erroneous facts and data.[4] In opposition, Plaintiff argues that Theriot's work is the product of reliable principles, and Defendants' position is incorrect.[5] Considering the motion, the opposition, the applicable law, and the record, the Court grants the motion in part and denies it in part.

---

[1] Rec. Doc. 81.

[2] *See generally* Rec. Doc. 1.

[3] Rec. Doc. 81-3.

[4] Rec. Doc. 81-1 at 2.

[5] Rec. Doc. 87 at 3.

## I. Background

St. Augustine contracted with Defendant Covington Flooring Company, Inc. ("Covington") to replace the hardwood floors in the gymnasium located at 2600 A P Tureaud Avenue, New Orleans, Louisiana 70119, after it was damaged during a hurricane.[6] It is alleged that Covington's employees were utilizing cloth rags to apply Bona DriFast Stain and Bona Sport Seal products which contain compounds that are susceptible to self-heating and spontaneous ignition if the rags are not properly disposed.[7] The Complaint provides that shortly after Covington's employees left the project for the day on November 25, 2021, a fire was discovered at the gym.[8] It is alleged that the fire occurred as a result of the self-heating and combustion of the improperly discarded stain rags.[9] As a result of the fire, St. Augustine submitted a first-party claim for repairs and additional expenses incurred as a result of the fire.[10] At the time of the fire, the gymnasium was insured by Certain Underwriters at Lloyds, London, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity of Arizona, United Specialty Insurance Company, Lexington Insurance Company, HDI Global Specialty SE, Old Republic Union Insurance Company, Geovera Specialty Insurance Company, and Transverse Specialty Insurance Company ("Insurance Plaintiffs").[11]

---

[6] Rec. Doc. 1-2 at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] Rec. Doc. 1-2 at 1–3.

On November 10, 2022, Insurance Plaintiffs filed suit against Covington in the Civil District Court for the Parish of Orleans.[12] On December 14, 2022, Covington removed the matter to this Court, and it was assigned docket number 22-5292.[13]

On November 24, 2022, St. Augustine filed suit against Covington, The Phoenix Insurance Company, and Travelers Indemnity Company of Connecticut.[14] On January 30, 2023, Covington removed the matter to this Court, and it was assigned docket number 23-371.[15] On May 24, 2023, St. Augustine filed an Amended Complaint, which added The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America as defendants and removed The Phoenix Insurance Company and Travelers Indemnity Company of Connecticut as defendants.[16]

On June 9, 2023, Covington filed a Motion to Consolidate both cases.[17] On June 14, 2023, the Court granted the motion and consolidated the matters.[18] On November 29, 2023, the parties filed a Stipulation of Dismissal, dismissing all claims in docket number 22-5292.[19]

---

[12] Rec. Doc. 1-2.

[13] Rec. Doc. 1.

[14] Case No. 23-371, Rec. Doc. 1-2.

[15] Case No. 23-371, Rec. Doc. 1.

[16] Case No. 23-371, Rec. Doc. 13.

[17] Rec. Doc. 24.

[18] Rec. Doc. 25.

[19] Rec. Doc. 38.

On March 2, 2024, Defendants filed the "*Daubert* Motion to Exclude Expert Testimony of Plaintiff's Expert Witness, John W. Theriot."[20] On March 6, 2024, Plaintiff filed an opposition to the motion.[21]

## II. Parties' Arguments

### A.   *Defendants' Arguments in Support of the Motion*

Defendants argue that Theriot's opinions are borrowed and are not based on analysis.[22] Defendants contend that Theriot's business partner received an email from Bill Lacher ("Lacher"), who Theriot describes as the project manager for the St. Augustine gym restoration.[23] Defendants submit that the subject matter of Lacher's email was revisions for the amounts of purported restoration costs for the gymnasium building.[24] According to Defendants, the email contained a table of revised figures which was utilized by Theriot in preparation of his report issued on the same date.[25] Defendants raise doubt as to whether Theriot actually conducted his own independent review of the corresponding spreadsheets dated December 16, 2022, containing a breakdown of the restoration costs because Theriot overlooked a $10,000.00 error for column titled "Phase I Structure & Roof."[26] Defendants submit that Theriot testified that he borrowed the description and amounts for this entry directly from Lacher's January 31, 2024 email to use in his expert report.[27]

---

[20] Rec. Doc. 81.

[21] Rec. Doc. 87.

[22] Rec. Doc. 81-1 at 6.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 7.

[27] *Id.*

4

Defendants aver that the failure of Theriot to discover the discrepancy demonstrates that his opinion is unreliable as the elements of damages and amounts originate completely from another source, and Theriot did no analysis of this information to determine its reliability.[28]

Defendants argue that Theriot's opinions are not the product of reliable principles and methods, and Theriot's opinions do not reflect a reliable application of the principles and methods to the facts of this case as to comply with Fed. R. Evid. 702.[29] Defendants aver that Theriot's opinions, and the bases of his opinions are inadmissible under Fed. R. Evid. 703.[30] Defendants argue that, although mathematical calculations of addition and subtraction are reliable principles and methods, one must actually perform these calculations.[31] Defendant contends that the $10,000.00 discrepancy is not an error in addition by Theriot, rather it was inaccurate information provided to Theriot which Theriot did not verify.[32]

Defendant suggests that Theriot is being used as a "conduit" for presenting the restoration costs argued by Plaintiff.[33] Defendants contend that Theriot received the spreadsheets containing the restoration costs estimates from Lacher, who received them from Kevin Derbigny, who is believed to work for Woodward Design Build.[34] Defendant asserts that the spreadsheets cannot be admitted into evidence without expert testimony.[35] It is Defendants' belief that Theriot has been

---

[28] *Id.* at 9.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at 11–12.

[35] *Id.* at 12.

relegated to "parrot" the opinions in the spreadsheets.[36]

Defendants argue that Theriot's testimony is not based on sufficient facts or data.[37] Defendants submit that Theriot includes an element of damage labeled as "Temporary Locker Rooms" in his expert report with an alleged value of $337,818, that admittedly has no evidentiary support.[38] Defendants contend that Theriot received this value from Lacher and did not independently confirm the existence of the expense.[39] Defendants argue that Theriot should be excluded from providing any expert testimony on this item.[40]

Defendants argue that Theriot's scientific, technical, or other specialized knowledge will not help the trier of fact to understand the evidence or to determine a fact in issue.[41] Defendants contend that a reasonable juror is capable of adding numbers and calculating the "Soft Costs" element which requires one act of multiplication to obtain a 10% sub-amount.[42]

### B. *Plaintiff's Arguments in Opposition to the Motion*

According to Plaintiff, Defendants' argument that Theriot's opinions are borrowed is not a sufficient basis to exclude his testimony.[43] Plaintiff contends that "[e]xperts are not required to prepare all documents that support an opinion, as long as the information is of the type reasonably

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.* at 13.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] Rec. Doc. 87 at 3.

relied on by professionals in other fields."[44] Plaintiff asserts that Theriot is not acting as a mouthpiece of another party in another specialty, and his related experience as a damages expert is sufficient to qualify him to testify in this matter.[45]

Plaintiff argues that Theriot's work is the product of reliable principles.[46] Plaintiff avers that under *Daubert*, an expert can base his or her opinion on a review of records supplied by others.[47] Plaintiff contends that Theriot's methodology is sufficient and reflects a reliable application of principles.[48]

Plaintiff argues that Theriot's testimony will assist the jury in this matter.[49] Plaintiff asserts that Defendants will have an opportunity to cross-examine Theriot and this will allow the jury to decide what weight, if any, should be given to Theriot's opinion.[50]

### III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[51] Rule 702 states that a witness "qualified as an expert by knowledge, skill, experience, training, or education," may provide expert testimony when "scientific, technical, or other specialized knowledge will help the trier of fact to understand the

---

[44] *Id.* (citing Fed. R. Evid. 703; *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94 (2nd Cir. 2000)).

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.* at 4.

[49] *Id.*

[50] *Id.*

[51] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

evidence or to determine a fact in issue."[52] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony must be based upon sufficient facts or data,

(2) the testimony must be the product of reliable principles and methods, and

(3) the expert must reliably apply the principles and methods to the facts of the case.[53]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[54] The court's gatekeeping function mostly involves a two-part inquiry.

First, the court must determine whether the expert testimony is reliable, which requires an assessment of whether the expert testimony's underlying reasoning or methodology is valid.[55] The court's inquiry into the reliability of expert testimony is flexible and fact-specific.[56] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[57] In analyzing reliability, *Daubert* instructs courts to consider (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to

---

[52] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[53] Fed. R. Evid. 702.

[54] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[55] *See Daubert*, 509 U.S. at 589. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[56] *Seatrax*, 200 F.3d at 372.

[57] *See Daubert*, 509 U.S. at 590.

the technique; and (5) general acceptance within the scientific community.[58]

Second, the court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact in understanding the evidence.[59] The second inquiry primarily analyzes whether the expert testimony is relevant.[60]

Yet a court's role as a gatekeeper does not replace the traditional adversary system.[61] A "review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[62] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[63] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[64]

## IV. Analysis

### A. *Erroneous Data and "Borrowed Opinions"*

First, Defendants argue that Theriot's opinions are borrowed and based on no analysis since the chart containing the purported restoration costs for the gymnasium building were sent to

---

[58] *Id.* at 592–94. In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that Daubert's list of specific factors does not necessarily nor exclusively apply to every expert in every case. *Kumho Tire*, 526 U.S. at 141. The overarching goal "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

[59] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[60] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[61] *See Daubert*, 509 U.S. at 596.

[62] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[63] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[64] *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir.1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

9

Theriot by a third person.[65] Defendants submit that Theriot testified that he borrowed the description and amounts for this entry directly from Lacher's January 31, 2024 email to use in his expert report.[66] In opposition, Plaintiff contends that the fact that Theriot analyzed the spreadsheets of Lacher and Derbigny is not grounds for exclusion.[67]

> As the Fifth Circuit has explained:
>
> [T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable. This requires some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient .... The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.[68]

Theriot is a certified public accountant and certified forensic accountant retained by Plaintiff to "conduct a preliminary analysis of the losses sustained by [Plaintiff]…"[69] Under Rule 703, "the third source contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception."[70] Hence, the fact that Theriot relied on data presented to him by Lacher in forming his opinion does not in itself render Theriot's opinions unreliable.

Defendants raise doubt as to whether Theriot actually conducted his own independent review of the corresponding spreadsheets dated December 16, 2022, containing a breakdown of the restoration costs because Theriot overlooked a $10,000.00 error for column titled "Phase I

---

[65] Rec. Doc. 81-1 at 6–9.

[66] *Id.*

[67] Rec. Doc. 87 at 3.

[68] *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc) (citations omitted); *but see* Fed. R. Evid. 703 (permitting an expert witness to base his opinion on "facts or data ... that the expert has been made aware of or personally observed" and to opine on inadmissible evidence if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject").

[69] Rec. Doc. 81-3.

[70] Fed. R. Evid. 703, Advisory Committee Notes.

Structure & Roof."[71] The error alleged is not grounds for excluding Theriot's testimony and opinions outright, and one cannot assume that based on said error that Theriot did not conduct an independent review of the data provided to him. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[72] Matters left for the jury's consideration include the alleged miscalculations, erroneous assumptions, and inconsistencies that plaintiffs object to.[73] As such, the Court rejects Defendants' argument.

### B.   *Whether Theriot Can Rely on Inadmissible Evidence*

Next, Defendant suggests that Theriot is being used as a "conduit" for presenting the restoration costs argued by Plaintiff.[74] Defendants contend that Theriot received the spreadsheets containing the restoration costs estimates from Lacher, who received them from Kevin Derbigny, who is believed to work for Woodward Design Build.[75] Defendant asserts that the spreadsheets cannot be admitted into evidence without expert testimony.[76] It is Defendants' belief that Theriot has been retained to "parrot" the opinions in the spreadsheets.[77] Defendants have filed a Motion in

---

[71] *Id.* at 7.

[72] *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.,* 80 F.3d 1074, 1077 (5th Cir.1996)(quoting *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir.1987)).

[73] *Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.,* No. 06-4262, 2009 WL 2356292, at *3 (E.D. La. July 28, 2009) (*quoting Southwire Co. v. J.P. Morgan Chase & Co.,* 258 F.Supp.2d 908, 935 (W.D.Wis.2007))("the alleged errors and inconsistencies are grounds for impeaching the credibility of the experts and the reliability of their ultimate findings; however, mistakes are miscalculations are not grounds for excluding evidence." (*citing Daubert,* 509 U.S. at 596)).

[74] *Id.*

[75] *Id.* at 11 – 12.

[76] *Id.* at 12.

[77] *Id.*

11

Limine[78] wherein they object to the admission of the spreadsheets prepared by Kevin Derbigny and relied on by Theriot in his calculations and expert report. For these reasons, Defendants argue that Theriot must be excluded as an expert witness.[79]

The Fifth Circuit has stated:

To be clear, we obviously do not conclude that an expert may never rely on inadmissible evidence. We reiterate that Rule 703 expressly permits an expert to base opinions on "facts or data ... that the expert has been made aware of or personally observed," including inadmissible evidence if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." And we likewise do not conclude that an expert may not rely on another expert's (or a lay witness's) admissible testimony. Rather, we determine that in these particular circumstances—where the inadmissible evidence (1) is from a witness testifying at the same trial, (2) is critical to the expert's testimony, and (3) is not independently verified by the expert—the expert's testimony relying on that inadmissible evidence does not pass muster under Rules 702 and 703.[80]

As the Court addressed in an Order on Defendants' motion in limine, the Fifth Circuit has held that a lay witness may testify regarding the cost of repairs that have actually been performed on a property.[81] However, expert testimony is "essential" for proving the estimated reasonable costs of reconstruction.[82] It is unclear to the Court whether the repairs at the gymnasium have been completed. To the extent that fact witnesses intend to testify regarding repairs that have been performed, such testimony is admissible. However, expert testimony is needed to establish estimates for future repairs.

Theriot cannot testify to items of damages that are not presented through other admissible evidence. Theriot is a certified public accountant and certified forensic accountant retained by

---

[78] Rec. Doc. 76.

[79] Rec. Doc. 8-1 at 12.

[80] *In re: Taxotere (Docetaxel) Prod. Liab. Litig.,* 26 F.4th 256, 269 n.10 (5th Cir. 2022).

[81] *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 736 (5th Cir. 2010).

[82] *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007).

Plaintiff to "conduct a preliminary analysis of the losses sustained by [Plaintiff]…"[83] He would not be qualified to independently verify the estimates of costs for future repairs to the gymnasium, as it does not appear he has any expertise in construction or repair work. The Court has ruled that Bill Lacher, Ashley King, Kevin Derbigny may testify to future repair costs if Plaintiff properly lays a foundation for the basis of their expertise at trial.

C.       *Temporary Locker Room Costs*

Defendants argue that Theriot's testimony is not based on sufficient facts or data.[84] Defendants submit that Theriot includes an element of damage labeled as "Temporary Locker Rooms" in his expert report with an alleged value of $337,818, that admittedly has no evidentiary support.[85] Defendants contend that Theriot received this value from Lacher and did not independently confirm the existence of the expense.[86] Defendants argue that Theriot should be excluded from providing any expert testimony on this item.[87] Plaintiff does not address this argument in opposition. In the absence of evidence supporting this element of damage contained in Theriot's expert report, "Temporary Locker Room Costs" must be excluded from Theriot's testimony.[88]

---

[83] Rec. Doc. 81-3.

[84] *Id.*

[85] *Id.*

[86] *Id.* at 13.

[87] *Id.*

[88] *See Allen v. Pennsylvania Eng'g Corp.,* 102 F.3d 194, 198 (5th Cir. 1996) ("In the absence of scientifically valid reasoning, methodology and evidence supporting these experts' opinions, the district court properly excluded them.")

D.   *Whether Theriot's Expert Testimony Will Assist the Jury*

Defendants argue that Theriot's scientific, technical, or other specialized knowledge will not help the trier of fact to understand the evidence or to determine a fact in issue.[89] Defendants contend that a reasonable juror is capable of adding numbers and calculating the "Soft Costs" element which requires one act of multiplication to obtain a 10% sub-amount.[90] In opposition, Plaintiff argues that Theriot's report will assist the jury.[91] "Expert testimony [is] unnecessary" when the jury can "assess th[e] situation using only their common experience and knowledge."[92] While a jury may be capable of adding and multiplying numbers, the fact that a "Soft Costs" calculation requires a 10% sub-amount is not within the common knowledge of lay person. As such, the Court finds that Theriot's testimony will assist the jury.

---

[89] *Id.*

[90] *Id.*

[91] Rec. Doc. 87 at 4.

[92] *Peters v. Five Star Marine Serv.,* 898 F.2d 448, 450 (5th Cir. 1990).

## V. Conclusion

For the reasons stated herein, the Court grants the motion in part and denies it in part. Theriot may testify at trial. However, Theriot may not testify to items of damages that are not presented through other admissible evidence. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Daubert* Motion to Exclude Testimony of Plaintiff's Expert Witness, John W. Theriot[93] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that Theriot may not offer testimony or opinions regarding "Temporary Locker Room Costs." The motion is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA**, this  8th  day of March, 2024.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[93] Rec. Doc. 81.

15